IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CASSANDRA FELDER, *Plaintiff,* v. CAPITAL ONE AUTO FINANCE, *Defendant.* | CIVIL ACTION NO. 24-1267 |

**Pappert, J.**                                                                                                   **December 16, 2024**

<u>MEMORANDUM</u>

Cassandra Felder and Capital One Auto Financing entered into a security agreement concerning a vehicle in April of 2019. Nearly five years later, Felder filed this lawsuit, claiming that Capital One violated several federal laws by misrepresenting or failing to disclose information related to that agreement and then breached the agreement by failing to acknowledge her attempt to rescind it. Capital One removed the case to this Court, answered the Complaint, and moved for judgment on the pleadings. The Court will grant the motion and enter judgment in favor of Capital One with respect to the federal law claims in Counts 1–3 but will dismiss without prejudice the state law breach of contract claim in Count 4.

I

On April 16, 2019, Cassandra Felder purchased a 2015 Infiniti QX60 from Devon Nissan. (Compl. at 11, ECF No. 1; Retail Sale Investment Contract at 1–2, ECF No. 28.) To finance the purchase, Felder signed a Retail Sale Investment Contract (RISC) pursuant to which the assignee, Capital One Auto Finance, took a security interest in

1

the vehicle. (RISC at 1–3.)[1] Sometime afterwards, Felder sent Capital One a notice of rescission in which she purported to exercise rights under 15 U.S.C. § 1635, a provision of the Truth in Lending Act, and demanded that Capital One release the security interest it held in connection with the agreement. (*Id.*; Notice at 10-11, ECF No. 6.) In early 2024, Felder sued Capital One — which removed the case from state court (ECF No. 1) — alleging that Capital One (1) failed to disclose material information related to the agreement and misrepresented its terms in violation of Rule 10b-5; (2) improperly calculated the finance charge and failed to provide required disclosures in violation of the Truth in Lending Act; (3) did not comply with 12 C.F.R. § 360.6; and (4) breached the agreement by "fail[ing] to acknowledge the rescission notice and release the security interest." (Compl. at 11-13.) After Capital One answered the Complaint, (ECF No. 8), the Court held an on-the-record Rule 16 conference and issued a scheduling order, (ECF Nos. 12, 13). Discovery closed while this motion was pending.

II

A motion for judgment on the pleadings based on failure to state a claim is subject to the same standard as a Rule 12(b)(6) motion: the court must accept as true the nonmovant's factual allegations in the pleadings and draw all reasonable inferences in his favor. *Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022). To succeed, the movant must show "that there are no issues of material fact, and that he is entitled to judgment as a matter of law." *Allstate Prop. & Cas. Ins. Co. v. Squires*, 667 F.3d 388, 390 (3d Cir. 2012). A plaintiff can survive a Rule 12(c) motion if her complaint contains

---

[1] Under the terms of the agreement, Felder received over $31,000 in financing. (RISC at 1.) With the finance charge calculated on a daily basis at a 9.99% APR and $570 monthly payments for roughly six years, the total sale price was nearly $43,000. (*Id.* at 1, 3)

"sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged." *Bibbs*, 43 F.4th at 339 (citation omitted). But if the plaintiff "has not articulated enough facts to 'raise a right to relief above the speculative level,'" the motion will be granted. *Bangura v. City of Philadelphia*, 338 Fed. App'x 261, 264 (3d Cir. 2009).[2]

### III

The parties agree that the alleged security at issue here is an agreement to finance the purchase of a vehicle. (Compl. at 11; Answer at 2, ECF No. 8; RISC at 1–7.) Because this agreement constitutes a "note delivered in consumer financing," it does not fall within the meaning of a "security" under the Securities Exchange Act of 1934, *see Reves v. Ernst & Young*, 494 U.S. 56, 65 (1990), and Rule 10b-5 doesn't apply.

For conduct to be subject to the fraud prohibitions in Rule 10b-5, it must concern a "security" as defined in 15 U.S.C. § 78c(a)(10). This statutory definition, which includes "any note" or "investment contract," 15 U.S.C. § 78c(a)(10), is deliberately broad, "encompass[ing] virtually any instrument that might be sold as an investment," *Reves*, 494 U.S. at 61. But because "Congress' purpose in enacting the securities laws was to regulate *investments*," not "to provide a broad federal remedy for all fraud," not all instruments are regulated by the securities laws. *See id.* at 61–63 (quotation

---

[2] As on a Rule 12(b) motion, courts liberally construe *pro se* pleadings on a motion for judgment on the pleadings, though *pro se* plaintiffs still must allege sufficient facts to state a claim. *Starr v. Equifax*, 2024 WL 816223, at *2 (E.D. Pa. Feb. 27, 2024). Likewise, the prohibition against granting as unopposed a motion to dismiss merely because a *pro se* plaintiff fails to respond applies to the Rule 12(c) context. *Id.* at *3. So even if the Court had not allowed Felder to respond out of time, (ECF No. 25), it would evaluate this motion on the merits.

omitted).  Consumer financing notes are among those instruments that do not fall within the statute.  *Id.* at 65.[3]

IV

The Truth in Lending Act (TILA) was enacted, *inter alia*, "to assure a meaningful disclosure" of credit and lease terms.  15 U.S.C. § 1601.  The Act does not merely require that creditors provide various disclosures to consumers.  Rather, Congress also provided obligors a limited right to rescind a "consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended."  *Id.* § 1635(a), (f). And creditors who violate certain provisions of the Act "with respect to any person" can be sued by that person, though suit must be brought "within one year from the date of the occurrence of the violation."  *Id.* § 1640(a), (e).

The transaction at issue here is a security agreement, signed in April of 2019, under which Capital One took a security interest in Felder's vehicle.  (Compl. at 11; Answer at 2, ECF No. 8; RISC at 1–3.)  Felder thus has no rights under § 1635, which applies only when a security interest is acquired in "the principal dwelling of the person to whom credit is extended."  15 U.S.C. § 1635(a).  And regardless of whether Felder's allegation concerning improperly calculated finance charges, (Compl. at 11, 12), is correct, the claim is time-barred under § 1640 because suit must have been brought "within one year" of any such violation.  15 U.S.C. § 1640(e).

---

[3] Although Felder's filings occasionally characterize the agreement as an investment contract, *see, e.g.*, (ECF No. 10 at 2), it cannot plausibly be construed as such.  *See SEC v. W.J. Howey Co.*, 328 U.S. 293, 301 (1946) ("The test is whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.").

4

V

A

The Federal Deposit Insurance Corporation is tasked with "insur[ing] . . . the deposits of all banks and savings associations" entitled to such insurance under federal law. 12 U.S.C. § 1811. To carry out this mandate, Congress gave the FDIC a variety of powers, including the authority to serve as receiver for an insured depository institution and to promulgate regulations needed to carry out the laws it enforces and administers. *See id.* § 1819. Pursuant to its statutory authority, the FDIC promulgated 12 C.F.R. § 360.6, which explains how the Corporation will treat certain asset transfers when exercising its authority, as receiver or conservator, to repudiate contracts. 12 C.F.R. § 360.6(d), (e), (g); *see generally* 65 Fed. Reg. 49189–49192 (2000). For a private party to enforce regulations promulgated pursuant to federal law, the enabling statute must contain a private right of action and the regulation must construe a personal right created by that statute. *Three Rivers Ctr. for Indep. Living, Inc. v. Housing Auth. of the City of Pittsburgh*, 382 F.3d 412, 422–24 (3d Cir. 2004).

B

Felder alleges that Capital One "fail[ed] to perform duties as required" by this regulation, (Compl. at 12),[4] but the regulation imposes no obligation, duty or requirement on Capital One. The detailed requirements a transaction must meet in order to be covered by the rule are not requirements that an institution *do* anything with respect to a transaction or some other party; the requirements simply detail which

---

[4] Felder alleges Capital One violated 12 C.F.R. § 360.6(2), which doesn't exist. She may have meant to point to subsection (b)(2), which concerns disclosure requirements a securitization must satisfy in order to be subject to the rule, but because Felder is proceeding *pro se*, the Court will consider her claim in context of the entire regulation.

transactions will be treated in a particular way. *See* 12 C.F.R. § 360.6(b), (c); *cf.* 75 Fed Reg. 60287, 60287 (2010) (describing the regulation as a clarification of FDIC authority).[5] Thus, even if there were a private right of action in the enabling statute, the regulation construes no private right, so Felder cannot bring suit to enforce the regulation. *Cf. Three Rivers Ctr. for Indep. Living*, 382 F.3d at 430 ("Since the [] regulations at issue do not articulate personal rights, they of course cannot *construe* personal rights that [the enabling statute] creates . . . . As a result, plaintiffs cannot enforce the regulations by way of [the enabling statute's] private right of action.").

## VI

To succeed on her state-law claim for breach of contract, Felder must demonstrate "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016).[6] Felder alleges that Capital One breached the security agreement by "fail[ing] to

---

[5] This regulation has been amended several times since it was first promulgated, in light of changes to generally accepted accounting principles, statutory amendments and regulatory reforms. *See* 75 Fed. Reg. 12962 (2010); 75 Fed. Reg. 60287 (2010); 80 Fed. Reg. 73087 (2015); 81 Fed. Reg. 41422 (2016); 85 Fed. Reg. 12724 (2020). Although the rule has changed in complexity and breadth over time, the nature of the regulation — that it concerns how the FDIC will act, in a certain situation and with respect to certain asset transfers — hasn't changed. Subsection (f), added in 2010, does impose a requirement on non-FDIC parties, but this requirement is clearly irrelevant to any right Felder might have respecting the security agreement: subsection (f) concerns situations in which the FDIC has defaulted on or repudiated a transaction and provides the requirements for giving the Corporation notice that triggers its consent to the party's exercise of contractual rights despite a statutorily imposed stay. 75 Fed. Reg. at 60288–89, 60295–96; 12 C.F.R. § 360.6(f).

[6] The Court has supplemental jurisdiction over the breach of contract claim because it is "so related" to the federal law claims within the Court's original jurisdiction that it "form[s] part of the same case or controversy." 28 U.S.C. § 1367(a). Despite dismissing the federal law claims over which it has original jurisdiction, the Court will exercise its discretion to hear this claim. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

acknowledge the rescission notice and release the security interest." (Compl. at 13.) Insofar as Felder's claim is premised on Capital One's obligation to honor the rescission notice under 15 U.S.C. § 1635 — which the pleadings suggest, *see* (Notice at 10) — the claim fails because Felder cannot plausibly allege that Capital One had such an obligation. *Supra* Section IV. Nothing in the contract provides Felder broader rights than she has under TILA with respect to rescission. Nor does the contract incorporate that statute's substantive requirements such that a breach of contract claim would reach the substance of a TILA claim without being procedurally barred. And Felder alleges no facts that would support a different theory of breach.

## VII

A court should grant a plaintiff leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 501 (E.D. Pa. 2014) (explaining that Rule 15(a)(2) applies to Rule 12(c) motions). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Merck & Co. Sec., Derivative & ERISA Litig.*, 493 F.3d 393, 400 (3d Cir. 2007) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). The decision of whether to grant or deny leave to amend is within the sound discretion of the district court. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001) (citations omitted). It would be futile for Felder to attempt to amend her federal law claims: Rule 10b-5 doesn't apply to the security agreement at issue; the

TILA claims are either inapplicable to this transaction or time-barred; and 12 C.F.R. § 360.6 does not construe a private right.  But because it is conceivable that Felder could allege sufficient facts to state a claim for breach of contract she will be given leave to attempt to do so.[7]

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

---

[7] The Court currently has supplemental jurisdiction over the breach of contract claim.  But a breach of contract claim unrelated to the federal claims might not fall within the Court's supplemental jurisdiction.  And whether the Court would have diversity jurisdiction over an amended complaint depends on whether the amount in controversy is adequately pled; the only statement related to the amount in controversy in the current complaint is ambiguous, *see* (Compl. at 13), though a liberal interpretation of it would permit the exercise of jurisdiction.